IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DAVID WILLETT; AMBER FOSSE; and**
**DESERT PAPER AND ENVELOPE**
**COMPANY, INC., on behalf of themselves**
**and all others similarly situated,**

      **Plaintiffs,**

v.                                                                       No. 1:13-cv-1241-JCH/LAM

**REDFLEX TRAFFIC SYSTEMS, INC.;**
**CREDITWATCH SERVICES LTD.;**
**CREDITWATCH OVERSIGHT LLC;**
**CWGP, LLC; and CREDIT CONTROL, LLC,**

      **Defendants.**

## ORDER DENYING PLAINTIFFS' SECOND MOTION FOR ORDER TO SHOW CAUSE [*Doc. 152*]

**THIS MATTER** is before the Court on *Plaintiffs' Second Motion for Order to Show Cause and for Sanctions and for a Stay of Other Proceedings (Doc. 152)*, filed December 23, 2014. On January 9, 2015, Defendant Creditwatch Services, Ltd. (hereinafter "Creditwatch") filed a response to the motion [*Doc. 162*] and, on the same day, Defendant Credit Control, LLC (hereinafter "Credit Control") filed a response to the motion [*Doc. 164*]. On January 26, 2015, Plaintiffs filed a reply. [*Doc. 167*].[1] Having considered the motion, responses, reply, record of the case, and relevant law, the Court **FINDS** that the motion shall be **DENIED**.

---

[1] On January 28, 2015, Plaintiffs filed an unopposed motion to exceed the Court's limit of fifty (50) pages for exhibits, asking to file up to seventy-nine (79) pages in support of its reply. [*Doc. 168*]. The Court notes that the majority of these pages are the transcript of the December 10, 2014 hearing regarding Plaintiff's first motion for order to show cause, which is not on the Court's docket and is helpful for the Court's resolution of the pending motion, especially because the undersigned did not conduct the hearing. *See* [*Doc. 167-1*]. Therefore, the Court hereby **GRANTS** Plaintiffs' unopposed motion to file excess pages [*Doc. 168*].

**BACKGROUND**

Plaintiffs allege that Defendants made nonconsensual automated calls to Plaintiffs on their cellular telephones in order to collect fines imposed by the City of Albuquerque for traffic violations, and Plaintiffs seek relief under the Telephone Consumer Protection Act. *See* [*Doc. 96*] (Amended Complaint). Plaintiffs originally brought their suit against Defendants Redflex Traffic Systems, Inc., and Creditwatch. *See* [*Doc. 1*]. On May 27, 2014, Creditwatch filed a Rule 7.1 disclosure stating that it is presently owned by CWGP, LLC (hereinafter "CWGP"), as its general partner, and Credit Control, LLC, as its limited partner. [*Doc. 51*].[2] On July 18, 2014, Plaintiffs filed a motion to file an amended complaint which, in part, added Creditwatch Oversight, LLC, CWGP, and Credit Control as Defendants [*Doc. 81*], and that motion was granted on August 20, 2014 [*Doc. 95*]. On October 10, 2014, Credit Control filed a Rule 7.1 disclosure stating that it has no parent corporation or entity [*Doc. 125*], and, on October 17, 2014, CWGP filed a Rule 7.1 disclosure stating that Credit Control is the parent of CWGP [*Doc. 129*].

On June 2, 2014, Plaintiffs filed a motion to compel discovery from Creditwatch. [*Doc. 55*]. On June 26, 2014, Creditwatch filed a response to the motion in which it stated that Creditwatch was sold in July 2013, was in "wind down," and that it had no employees with knowledge of any of the information being sought by Plaintiffs. [*Doc. 71* at 1]. In addition, Creditwatch stated that, to the extent any additional responsive information exists, the information would be with Credit Control, which was not a party to the litigation at that time. *Id.* at 2. Creditwatch provided the name of Credit Control's attorneys and stated that Plaintiffs could contact them to arrange for access to and an on-site inspection of the relevant information, and

---

[2] The Court notes that Fed. R. Civ. P. 7.1(b)(1) requires a party to "file the disclosure statement [identifying any parent corporation and any publicly held corporation owning 10% or more of its stock] with its first appearance, pleading, motion, response, or other request addressed to the court," and yet Creditwatch did not file its disclosure until more than three months after it filed an answer to the complaint (*see Doc. 23*, filed February 18, 2014).

stated that "[t]here are approximately 51 boxes of documents and 1 server being preserved by Credit Control LLC."  *Id.* at 6.  On August 19, 2014, the referral judge previously assigned to this case, Judge Scott, entered an order granting Plaintiffs' motion to compel discovery from Creditwatch, and ordered "that counsel for the parties shall make arrangements for the review of the '51 boxes and 1 server' that Defendant Creditwatch has offered to make available to Plaintiffs."  [*Doc. 94* at 3] (citing *Doc. 71* at 2).

On September 29, 2014, Plaintiffs filed a motion for an order to show cause and for sanctions, contending that Creditwatch had failed to comply with Judge Scott's order granting Plaintiff's motion to compel.  [*Doc. 117*].  Defendant Creditwatch filed a response to the motion [*Doc. 132*], and Plaintiffs filed a reply [*Doc. 138*].  On December 10, 2014, Judge Scott held a hearing on the motion, at which counsel for Plaintiffs and for Creditwatch appeared.  *See* [*Doc. 149* at 1].  Judge Scott ordered "that the fifty-one (51) boxes and one (1) server identified by Defendant Creditwatch Services Ltd. in the discovery responses shall be made accessible and available for review within seven (7) days from the entry of this Order without exception or excuse."  *Id.*  Judge Scott further stated that "the Court reserves jurisdiction to issue an order to show cause directing person(s) to personally appear and to show cause as to why they should not be held in contempt for failure to produce and/or make available for review the fifty-one boxes and one (1) server identified by Defendant Creditwatch Services Ltd."  *Id.* at 2.  This case was reassigned to the undersigned as the referral judge on January 2, 2015.  [*Doc. 155*].

## PLAINTIFFS' MOTION

In Plaintiffs' second motion for an order to show cause, Plaintiffs contend that Creditwatch and Credit Control "have defied this Court's second order to produce a computer server containing both the call records at issue for the putative class and all of the other information responsive to

3

Plaintiffs' discovery requests, such as skip tracing records, policy documents, and documents relating to the relationship between the defendants." [*Doc. 152* at 1]. Plaintiffs further state that Creditwatch "reneged on its initial offer to make the server available and refused to produce any of these key documents." *Id.* Plaintiffs contend that Creditwatch and Credit Control "still refuse to produce the server containing the call data and other responsive information, and now claim that the Court never even ordered it to be produced," and that these Defendants "claim that this Court's order instead applies only to a different domain server, which they admit is not likely to contain any relevant information whatsoever, and which they cannot even access because they don't know the password." *Id.* at 2. Plaintiffs ask the Court to: (1) order that all counsel for Creditwatch and Credit Control, plus certain persons who work for these Defendants, appear personally at a hearing before the Court to consider a finding of contempt and the imposition of sanctions; (2) stay all other proceedings pending the results of this hearing; and (3) order sanctions against these parties to compel the immediate production of the server and 51 boxes of documents at issue, to pay the entire cost of imaging the server and 51 boxes, and to pay the costs and attorney fees expended by Plaintiffs since April 17, 2014 on this discovery dispute. *Id.* at 9-10.

In response to the second motion for an order to show cause, Creditwatch states that it does not possess or control either the boxes or the server, that both the boxes and the server identified in the discovery responses were made accessible and available for Plaintiffs' review, and that Plaintiffs have declined to review the boxes or the server. [*Doc. 162* at 1]. Creditwatch explains that in July 2013, prior to this suit being filed, Creditwatch was sold to new ownership, that it is now in "wind down," that it has no employees with knowledge of any of the information being sought by Plaintiffs, and that it has a "defense only" insurance policy under which it is provided with defense counsel for "duty-to-defend" coverage. *Id.* at 2. Creditwatch contends that it

4

complied with the Court's order to make the boxes and server available "to the greatest extent it could for these items that are not in the possession, custody, or control of Creditwatch." *Id.* at 3.

In Credit Control's response to the second motion for an order to show cause, Credit Control states that it was not a party to this litigation at the time the Court issued the initial discovery order relating to the boxes and server. [*Doc. 164* at 2]. Credit Control further states that, "on January 7, 2015, Credit [Control] deposited all 88 (not 51 as originally contemplated) boxes as well as the server, with the third-party vendor Iron Mountain and they are available for Plaintiffs' review." *Id.* Credit Control states that, at the request of CWGP, it "has been serving as a document repository for documents relating to Creditwatch as it undergoes wind down, including information from the aforementioned server." *Id.* at 3. Credit Control states that, on or about July 1, 2013, it created "virtual servers" from the original servers used by Creditwatch, that these virtual servers exist only within Credit Control's systems, and that the original servers were not retained by Credit Control. *Id.* Credit Control states that it retained one Creditwatch server in its physical possession, that it believed that this "actual server" was the server relevant to this case, but, when Credit Control attempted to inspect this server on December 22, 2014, it discovered that the server did not contain call data information and was password protected. *Id.* at 3-4. Credit Control states that it then "worked to determine where, if anywhere, call data information was located," and this investigation led to the discovery of the call data information on the virtual servers, and that this call data was served as part of Credit Control's responses to Plaintiffs' discovery requests on January 7, 2015. *Id.* at 5. Credit Control contends that Plaintiffs cannot seek sanctions against Credit Control with regard to the Court's orders regarding discovery requests served on Creditwatch, since Credit Control has not had a chance to be heard with regard to those matters. *Id.* at 5-6.

In reply, Plaintiffs contend that Judge Scott's order did not just pertain to the physical server, but also pertained to the virtual servers. [*Doc. 167* at 1-2]. Plaintiffs contend that "Creditwatch has been withholding the existence of the virtual servers from Plaintiffs and the Court for more than nine months," and has been "[h]iding behind the absurd and now <u>repeatedly rejected</u> claim that it does not have access to *its own business records*, which are held at *its own address*, and by *its own limited partner* (Credit Control) *at the same address*." *Id.* at 2. Plaintiffs contend that Creditwatch, Credit Control, and CWGP are a single enterprise because they share the same address and are primarily controlled by the same individual, Richard A. Saffer, who is the CEO of Credit Control and the manager of CWGP. *Id.* at 3. Plaintiffs state that "[i]t is now clear that the bulk of Creditwatch's business records, including the call records and other information that Plaintiffs requested in discovery nine months ago, actually exist on the Virtual Servers that Credit Control has held since July 2013." *Id.* at 10. Plaintiffs thus contend that Judge Scott's order is not limited to the physical server identified by Creditwatch. *Id.* Plaintiffs state that they have not yet traveled to Missouri to copy the documents in the 88 boxes because they do not want to make that trip until the issue regarding the servers has been resolved. *Id.* Therefore, Plaintiffs ask the Court to: (1) order Creditwatch, Credit Control and CWGP to immediately produce for inspection and copying <u>all</u> of the Creditwatch servers; (2) order Creditwatch, Credit Control, and three individuals to appear before the Court to show cause why they should not be held in contempt of Court; and (3) enter sanctions against those parties. *Id.* at 11.

## **ANALYSIS**

The Court finds that Plaintiffs' second motion for an order to show cause should denied. First, with regard to Creditwatch, the Court finds that Plaintiffs' motion should be denied because the discovery at issue before Judge Scott when he entered his orders on Plaintiffs' motion to

compel and first motion for an order to show cause -- specifically, the 51 boxes of documents and the server identified by Creditwatch in their discovery responses -- *have been made available to Plaintiffs*.  Plaintiffs state that they have not yet made copies of the boxes of documents because they are waiting for the issue regarding the virtual servers to be resolved, but, nonetheless, Creditwatch complied with Judge Scott's order and made the boxes and the server available to Plaintiffs.  In fact, instead of the 51 boxes that had been identified by Creditwatch, 88 boxes of documents have been made available to Plaintiffs.

Second, the Court finds that Judge Scott's orders do not apply to the virtual servers that were discovered by Credit Control.  Rule 34(a)(1) requires a party to produce items that are "in the responding party's possession, custody, or control."  "The federal courts have universally held that documents are deemed to be within the possession, custody or control of a party for purposes of Rule 34 if the party has actual possession, custody or control of the materials *or* has the legal right to obtain the documents on demand."  *Sithon Maritime Co. v. Mansion*, No. CIV. A. 96-2262-EEO, 1998 WL 182785 *6 (D.Kan. April 10, 1998) (unpublished) (citation and internal quotation marks omitted).  "The party seeking production of the documents bears the burden of proving that the opposing party has such control."  *Id.* (citation, internal quotation marks, and ellipsis omitted).  Here, Plaintiffs make no showing that Creditwatch had knowledge of the virtual servers until Credit Control discovered them.  Plaintiffs contend that Creditwatch "willfully buried its head in the sand" with regard to the virtual servers (*Doc. 167* at 2), and that Creditwatch, Credit Control, and CWGP are a single enterprise because they share the same address, are in a partnership, and because the same individual, Richard A. Saffer, is the CEO of Credit Control and the manager of CWGP (*id.* at 3).  However, Creditwatch has maintained since it first responded to Plaintiffs' discovery requests that it did not have access to the requested

information, that it had no employees with knowledge of the requested information, and Creditwatch directed Plaintiffs to contact Credit Control for the requested information. *See* [*Doc. 171* at 5-6]. While Creditwatch stated that approximately 51 boxes and one server were being preserved by Credit Control (*id.* at 6), and Judge Scott ordered that the boxes and server that Creditwatch identified be produced to Plaintiffs (*Doc. 149*), Plaintiffs make no showing that Creditwatch was aware of the virtual servers at any point prior to their discovery by Credit Control. Plaintiffs also make no showing that Creditwatch had possession, custody, control, or the legal right to obtain the virtual servers from Credit Control. Plaintiffs cite to no authority that states that a company that has been sold and has no employees with knowledge of the requested discovery has the legal right to obtain discovery from the entities acting as a repository for its information. For these reasons, the Court finds that Plaintiffs have failed to show that Creditwatch has violated Judge Scott's order.

Finally, the Court finds that Plaintiffs' motion should be denied as to Credit Control and CWGP because the discovery requests at issue before Judge Scott were not directed at these Defendants (*see Doc. 55*), and Judge Scott's order granting Plaintiffs' motion to compel was entered against only Creditwatch (*see Doc. 94*). In addition, these Defendants were not present at the hearing before Judge Scott on Plaintiffs' first motion for an order to show cause, so they did not have an opportunity to be heard with regard to that motion. The Court, therefore, will not make these parties answer as to why they should not be held in contempt of Court as to discovery requests that were served on another party. The Court notes, however, that the information on the virtual servers is the subject of motions to compel against Credit Control and CWGP, which are currently before the Court. *See* [*Docs. 170* and *171*]. The Court will enter a separate order on

those motions pursuant to which Credit Control and CWGP will be accountable to the Court for any failure to comply.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, *Plaintiffs' Second Motion for Order to Show Cause and for Sanctions and for a Stay of Other Proceedings (Doc. 152)* is **DENIED.**

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**