IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DAVID WILLETT; AMBER FOSSE; and
DESERT PAPER AND ENVELOPE
COMPANY, INC., on behalf of themselves
and all others similarly situated,**

      **Plaintiffs,**

v.                                                             No. 1:13-cv-1241-JCH/LAM

**REDFLEX TRAFFIC SYSTEMS, INC.;
CREDITWATCH SERVICES LTD.;
CREDITWATCH OVERSIGHT LLC;
CWGP, LLC; and CREDIT CONTROL, LLC,**

      **Defendants.**

## ORDER GRANTING IN PART PLAINTIFFS' MOTIONS TO COMPEL DISCOVERY [*Docs*. *170* and *171*]

**THIS MATTER** is before the Court on *Plaintiffs' Motion to Compel Discovery From Defendant Credit Control, LLC (Doc. 170)* and *Plaintiffs' Motion to Compel Discovery From Defendant CWGP, LLC (Doc. 171)*, both filed February 2, 2015. On April 6, 2015, Defendants CWGP and Credit Control, LLC ("Credit Control") filed a combined response to the two motions to compel. [*Doc. 191*]. On April 16, 2015, Plaintiffs filed a reply to their motion to compel discovery from CWGP [*Doc. 198*], and a reply to their motion to compel discovery from Credit Control [*Doc. 199*]. Document 199 merely refers the Court to Document 198, rendering Document 198 essentially Plaintiffs' reply to both motions. The filing of a combined response to separate motions is contrary to the Court's requirement that a separate pleading should be filed in response to each motion. See D.N.M. Administrative Order 92-88 (May 4, 1992) ("[A]ll practitioners before the Court shall henceforth submit, in the case of responsive pleadings, a

separate pleading addressing each motion or other pleading to which a response is made."). Nevertheless, because the parties have combined their responses and replies to Plaintiffs' two motions, and because the issues raised in the two motions are almost identical, the Court will consider the two motions together in this Order. Having considered the motions, response, replies, record of the case, and relevant law, the Court **FINDS** that the motions shall be **GRANTED in part** and **DENIED in part**.

This case involves allegations of nonconsensual automated calls to Plaintiffs on their cellular telephones in order to collect fines imposed by the City of Albuquerque for traffic violations, and Plaintiffs seek relief under the Telephone Consumer Protection Act. *See* [*Doc. 96*] (Amended Complaint). Plaintiffs originally brought their suit against Defendants Redflex Traffic Systems, Inc., and Creditwatch Services, Ltd. ("Creditwatch"). *See* [*Doc. 1*]. On May 27, 2014, Creditwatch filed a Rule 7.1 disclosure stating that it is presently owned by CWGP, as its general partner, and Credit Control, as its limited partner. [*Doc. 51*]. On July 18, 2014, Plaintiffs filed a motion to file an amended complaint which, in part, added Creditwatch Oversight, LLC, CWGP, and Credit Control as Defendants [*Doc. 81*], and that motion was granted on August 20, 2014 [*Doc. 95*]. On October 10, 2014, Credit Control filed a Rule 7.1 disclosure stating that it has no parent corporation or entity, nor does any publicly held corporation own 10% or more of its stock. [*Doc. 125*], and, on October 17, 2014, CWGP filed a Rule 7.1 disclosure stating that Credit Control is the parent of CWGP [*Doc. 129*].

In Plaintiffs' motions to compel, Plaintiffs ask the Court to order Credit Control to fully respond to Requests for Admission ("RFA") Nos. 19-21; Interrogatory Nos. 1, 4, 6-10, 12, and 14-16; and Requests for Production ("RFP") Nos. 1-10, 13-18, 20-22, 24-26, 28, and 34-35 (*Doc. 170* at 1), and to order CWGP to respond to RFA Nos. 19-21; Interrogatory Nos. 1, 4, 6-10,

12, and 14-15; and RFP Nos. 1, 3, 4-10, 13-18, 20-22, 24-26, 28, and 34-35 (*Doc 171* at 1). In response to Plaintiffs' motions, CWGP and Credit Control state that Plaintiffs have already been provided with call information for their alleged putative class (*Doc. 191* at 1, citing Exhibit A), but that Plaintiffs have refused to engage in a discussion of a search protocol for the remaining information that is in a virtual server (*id.*).[1] CWGP states that in mid-January 2015 it discovered 1.6 terabytes of data believed to be the entirety of the relevant requested electronically stored information ("ESI"), and that it has attempted to work with Plaintiffs to respond to their discovery requests, but Plaintiffs have refused to work with CWGP to limit the data search. *Id.* at 2. CWGP further states that it has provided supplemental discovery responses, it has produced an initial batch of more than 19,000 Bates-labeled pages to Plaintiffs in response to their discovery requests, it continues to search through the ESI for responsive information, and that it will supplement its responses "as appropriate." *Id.* Credit Control states that, "[a]t the request of CWGP, Credit Control has served as a repository for information relating to Creditwatch during the course of the wind-down of Creditwatch," that "Creditwatch, through its general partner CWGP, has been instructing Defendant Credit Control to provide responses based on remaining Creditwatch documents pursuant to the services agreement between Creditwatch and Credit Control." *Id.* at 3. Credit Control further states that it incorporates CWGP's position by reference, and that the only Creditwatch-specific information that is known to Credit Control is in either the virtual server, or in the physical server and the 88 boxes of documents that have already been produced for Plaintiffs' inspection. *Id.*

---

[1] The Court notes that Credit Control stated in its response to Plaintiffs' second motion for an order to show cause [*Doc. 164*] that it created virtual server<u>s</u>, not just one virtual server. *See* [*Doc. 164* at 3]. The Court uses the term "server" in this Order because the parties refer to only one virtual server in their briefs relating to Plaintiffs' motions to compel. However, the Court does not intend its use of the word "server" to preclude production of information from *all* of the virtual servers containing any relevant information, if there are more than one.

With regard to its search of the virtual server, CWGP states that it scanned and searched a high-level directory of the data, that a spreadsheet of this directory has a separate line for each file folder (totaling more than 538,000 entries), and that the directory shows the file names, file types, file sizes, and dates of creation and modification for the files. *Id.* at 4. CWGP states that it performed searches for various terms, including party names, "call log," and "skip tracing," as well as each of the terms identified by Plaintiffs in RFP No. 11. *Id.* at 5. CWGP states that it produced more than 900 files comprising over 19,000 pages to Plaintiffs as a result of these searches. *Id.* CWGP states that the cost of processing the entire virtual server to enable more targeted searches would cost between $100,000 and $160,000. *Id.* CWGP states that, if the parties agree to limit the data to be processed, such as by file type, keywords, and creation dates, CWGP may be able to perform those searches at a reasonable cost. *Id.* As an alternative, CWGP states that the cost could be shifted to Plaintiffs or split between the parties. *Id.* CWGP states that there is no reasonable way to respond to Plaintiffs' request for more information about the server that they state is needed for them to discuss a search protocol. *Id.*

CWGP also states that some of the issues regarding Plaintiffs' discovery requests are now moot because CWGP has removed some of its previous objections and has provided amended responses. *Id.* at 6. CWGP and Credit Control further state that fully searching the virtual server would impose an undue burden on them because of the costs involved, and that they anticipate that the additional results will be minimal. *Id.* at 8. Therefore, these Defendants contend that forcing them to pay for a search the entire server would not advance this litigation in a substantial way. *Id.* at 9. CWGP and Credit Control also oppose turning over the virtual server to Plaintiffs because they state that would potentially turn over confidential debt collection information of third parties who may never be putative class members. *Id.* at 10.

In reply, Plaintiffs state that CWGP fails to respond to Plaintiffs' arguments regarding CWGP's objections to the discovery requests, thereby conceding that its objections are meritless. [*Doc. 198* at 1-2]. Plaintiffs contend that CWGP's supplemental responses are inadequate, and that Credit Control has not served any supplemental responses, so Plaintiffs state that none of the discovery requests raised in their motions are moot. *Id.* at 2-3. Plaintiffs contend that CWGP fails to support its statement that searching the entire virtual server would be unduly burdensome, and contends that the Court has already ordered Creditwatch and Credit Control to produce the entire server to Plaintiffs. *Id.* at 3-4. In addition, Plaintiffs contend that the documents produced by CWGP on April 6, 2015 are not identified as to which discovery requests they are responsive. *Id.* at 4-5. Plaintiffs refute CWGP's contention that they have refused to discuss a search protocol, and state that they told CWGP's counsel that they are willing to provide search terms, but they first need to know the operating system of the server, the total number of drives, the size of each drive, and the database management software on each drive, but this information has not been provided to them. *Id.* at 5. Plaintiffs, therefore, ask the Court to order CWGP to provide meaningful supplemental responses to Plaintiffs' discovery requests and produce the entire server and all other responsive documents. *Id.* at 5.

### 1.  *RFA Nos. 19-21*

These RFAs ask CWGP and Credit Control to admit that Creditwatch obtained the telephone numbers for Plaintiffs David Willet, Amber Fosse and Desert Paper and Envelope Company from a skip tracing service. [*Doc. 170-2*, Exhibit 2, at 4] and [*Doc. 171-3*, Exhibit 3, at 3-4]. In response, Credit Control referred to its general objections and stated that it lacks sufficient information to either admit or deny the requests. [*Doc. 170-2* at 4]. CWGP objected stating that the requests are overly broad, not limited in scope, not limited to the timeframe, not

5

limited to the parties, accounts, or issues involved in this litigation, and seek admission of legal conclusions. [*Doc. 171-3* at 3]. CWGP then admitted that Creditwatch placed calls to telephone numbers in the past, but denied that these calls were made on Redflex's behalf, and then stated that CWGP lacks knowledge or sufficient information to admit or deny the requests. *Id.* at 4. CWGP's supplemental responses are almost identical to its initial responses. *See* [*Doc. 198-1*, Exhibit 1, at 1-2].

The Court finds that Defendants' objections are without merit and should be overruled. First, Defendants' use of boilerplate, blanket objections are improper. *See Oleson v. K-mart Corp.*, 175 F.R.D. 570, 571 (D.Kan. 1997) ("The objecting party has the burden to substantiate its objections. . . . [and] must specifically show how each discovery request is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden") (citations omitted). CWGP's objections that these RFAs do not relate to the parties in this case are especially baffling since the requests specifically name the three Plaintiffs.

Second, to the extent CWGP and Credit Control are attempting to avoid answering these questions based on their contentions that they are only "repositories" for Creditwatch's information, the Court finds this contention is without merit because CWGP and Credit Control are the only entities that can supply the answers to these requests from the information they have from Creditwatch. Since Creditwatch has no employees who can provide information to Plaintiffs, the Court orders CWGP and Credit Control to provide all information they have from Creditwatch that is responsive to Plaintiffs' discovery requests. In short, Defendants cannot have it both ways -- they cannot both tell Plaintiffs that Creditwatch cannot respond to Plaintiffs' discovery requests because CWGP and Credit Control have all of its information, and then tell Plaintiffs that CWGP and Credit Control cannot respond because the information they have

6

pertains to Creditwatch's activities.  Pursuant to Fed. R. Civ. P. 36(a)(4), "[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."  It is clear from CWGP's and Credit Control's statements that they can readily obtain the information relating to Creditwatch's activities from the information they have obtained from Creditwatch.  The Court, therefore, overrules CWGP's and Credit Control's objections to these RFAs, finds that Plaintiffs' motion should be granted as to these RFAs, and orders CWGP and Credit Control to provide supplemental responses to these RFAs in accordance with Rule 36 **within ten (10) days of the entry of this Order**.

### 2. *Interrogatories and RFPs*

Plaintiffs contend that Credit Control and CWGP have failed to adequately respond to numerous interrogatories and RFPs.  See [*Doc. 170* at 1 and Exhibits 3 and 4] and [*Doc. 171* at 1 and Exhibits 4 and 5].  In response to these interrogatories and RFPs, Credit Control and CWGP objected on many grounds; however, in their response to Plaintiffs' motions to compel, Credit Control and CWGP do not refer to or explain their objections, but, instead, contend that the virtual server where all of Creditwatch's ESI is stored contains the information responsive to all of Plaintiffs' discovery requests.  See [*Doc. 191* at 2-3].  Credit Control and CWGP contend that the only issue remaining regarding Plaintiffs' discovery requests is how to search the virtual server that has Creditwatch's ESI on it.  *Id.*  Because neither Credit Control nor CWGP state that they continue to object to Plaintiffs' discovery requests, and because they admit that responsive, relevant information is contained in the virtual server, the Court overrules their objections to the discovery requests, and the Court will address the issue of how best to search the virtual server and produce responsive information to Plaintiffs.

First, the Court addresses Plaintiffs' contention that CWGP's production of more than 19,000 Bates-labeled pages to Plaintiffs in response to their discovery requests is inadequate because the documents are not identified as to which discovery requests they respond. [*Doc. 198* at 3-4]. Rule 33(b)(3) states that each interrogatory must "be answered separately and fully in writing under oath;" however, Rule 33(d) provides an option to produce ESI in response to an interrogatory "if the burden of deriving or ascertaining the answer will be substantially the same for either party." Similarly, a party producing the business records must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). Production of ESI under Rule 34 requires a party to either produce documents as they are kept in the usual course of business or to organize and label them to correspond to the categories in the request. Fed. R. Civ. P. 34(b)(E). CWGP states that it performed searches for various terms, including party names, "call log," and "skip tracing," as well as each of the terms identified by Plaintiffs in RFP No. 11, and that it produced 19,000 pages to Plaintiffs as a result of these searches. [*Doc. 191* at 5]. The Court finds that CWGP's production of the 19,000 pages of documents do not violate either Rule 33 or Rule 34 as long as the documents were produced in a manner by which Plaintiffs can search and locate the responsive documents. Plaintiffs do not contend that they are unable to locate and identify responsive documents from these 19,000 pages, or that the documents were not produced as they are kept in the usual course of business. The Court, therefore, will not require CWGP or Credit Control to categorize these documents as to which discovery request they respond absent a showing that Plaintiffs are unable to search the records themselves and ascertain this information for themselves.

In addition to the documents that have already been produced, the parties agree that additional searches of the virtual server (*see* page 3, n.1, *supra*) need to be conducted in order to respond fully to Plaintiffs' discovery requests. The Court will not order production of the entire virtual server to Plaintiffs, at this time, for two reasons. First, the Court rejects Plaintiffs' contention that the previous Magistrate Judge assigned to this case has already ordered production of the entire virtual server, since the orders entered by that Judge likely pertained to the physical server identified by Creditwatch, and did not consider the virtual server as it had not yet been discovered by Defendants at the time those orders were entered. Second, the Court agrees with CWGP and Credit Control that turning over the virtual server to Plaintiffs would potentially turn over confidential debt collection information of third parties who may never be putative class members. *See* [*Doc. 191* at 10]. The Court will also not order CWGP and Credit Control to conduct a search of the entire virtual server because it does not appear that that conducting a search of the entire 1.6 terabytes of data in the virtual server at a cost of $100,000 to $160,000 would be proportional to the likely benefit of such a search. *See id.* at 4.[2]

The Court, therefore, finds that limiting the search of the virtual server by file type, keywords, and creation dates, is a reasonable solution. CWGP states that it is willing to conduct such a search, but has not been able to because Plaintiffs have refused to engage in a discussion of a search protocol (*Doc. 191* at 1), and Plaintiffs state that they have not discussed a search protocol with CWGP because CWGP has failed to tell Plaintiffs the identification of operating system of the server, the total number of drives, the size of each drive, and the database management

---

[2] The Court notes that Defendants did not produce evidence of the cost of searching the entire server, nor did they include it in the affidavit they attached to their response to the motions to compel. *See* [*Doc. 191-1*]. In addition, Defendants did not object to the discovery requests on the grounds that it would be unduly burdensome to search the entire virtual server, so such an objection has been waived. Nevertheless, the Court finds that, at this time, a search of the entire server does not appear to be proportional to its likely benefit. However, in the event the Court needs to revisit this issue, Defendants will be required to provide adequate support for their statements regarding the cost of such a search, and will not be able to rely on objections not raised in their responses to the discovery requests.

software on each drive (*Doc. 198* at 5). The parties should have been able to resolve this issue on their own, without the Court's intervention. CWGP and Credit Control are under on ongoing obligation to supplement their production of relevant discovery with or without Plaintiffs' input as to search protocol, and Plaintiffs fail to explain why they need to know the operating system and number of drives in order to discuss a search protocol with CWGP and Credit Control. Counsel are not acting with the level of professionalism required by this Court. Therefore, counsel for all parties are instructed to review the Lawyer's Creed of Professionalism of the State Bar of New Mexico and ensure compliance with the admonitions set forth therein. See D.N.M.LR-Civ. 83.9 ("Lawyers appearing in this District must comply with the section for lawyers of 'A Creed of Professionalism of the New Mexico Bench and Bar.'"). The Court specifically calls counsel's attention to the admonition for counsel to be courteous and civil to each other, and to comply with reasonable discovery requests. *See* Creed of Professionalism

http://www.nmbar.org/Nmstatebar/For_Members/Creed_of_Professionalism.aspx

(site last checked May 7, 2015). Because counsel have not been able to resolve this issue on their own, the Court will set the following deadlines:

(1) CWGP and Credit Control shall produce to Plaintiffs the spreadsheet referred to in their response to Plaintiffs' motions to compel, which sets forth the 538,000 file folders, including the file names, file types, file sizes, and dates of creation and modification for the files on the virtual server(s) (*see Doc. 191* at 4, and page 3, n.1, *supra*) **no later than three (3) days after the entry of this order**;

(2) CWGP and Credit Control shall identify the operating system of the virtual server(s), and the total number of drives, the size of each drive, and the database management

software on each drive in the virtual server(s) **no later than three (3) days after the entry of this order**;

(3) Plaintiffs shall provide CWGP and Credit Control with a reasonable list of search terms, limited to the relevant time frame, parties, and issues of this case, including information necessary for Plaintiffs' motion for class certification, and shall also provide a reasonable list of the file folder/file names to be searched, **no later than three (3) days after receipt of the information in (1) and (2) above**; and

(4) CWGP and Credit Control shall conduct the searches as set forth by Plaintiffs in (3) above, and produce all relevant information resulting from those searches **no later than ten (10) days after receipt of the information in (3) above**; <u>**OR, in the alternative**</u>, CWGP and Credit Control shall produce to Plaintiffs the entire files and folders Plaintiffs specify in (3) above in a searchable format for Plaintiffs to conduct their own searches **no later than ten (10) days after receipt of the information in (3) above**.

The information produced by CWGP and Credit Control does *not* have to identify which discovery request the information responds to, as long as the information is produced in a manner by which Plaintiffs can search for the responsive information as easily as CWGP and Credit Control would be able to. In addition, the Court warns Defendants that they must produce documents and information from the relevant time frame as to <u>Plaintiffs' claims</u>, *not* as to the date they became the repository for Creditwatch's documents. Creditwatch has stated that it has no responsive information for Plaintiffs because that information is held by Credit Control and CWGP; therefore, the Court will not tolerate any contentions that Credit Control or CWGP do not have to produce the requested information because they only started holding Creditwatch's documents for them in July 2013. *See, e.g.*, [*Doc. 170-2* at 3] (Credit Control's general objection

11

regarding information requested prior to July 2013).  Moreover, *all* of CWGP's and Credit Control's objections to Plaintiffs' discovery requests have been overruled by the Court as set forth above.  The Court further finds that CWGP's and Credit Control's newly-raised objections that Plaintiffs' requests for the information discussed herein are unduly burdensome have been waived by these Defendants because they were not raised in their responses to Plaintiffs' discovery requests.  If CWGP and Credit Control continue to object to the production of information from the virtual server based on any of their overruled or waived objections, the Court may be inclined to order production of the entire virtual server to Plaintiffs and assess costs of any search(es) as the Court deems appropriate, once those costs have been proven by competent evidence.

**IT IS THEREFORE ORDERED** that *Plaintiffs' Motion to Compel Discovery From Defendant Credit Control, LLC (Doc. 170)* and *Plaintiffs' Motion to Compel Discovery From Defendant CWGP, LLC (Doc. 171)* are each **GRANTED in part** and **DENIED in part** as set forth above.

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**